SEE 'PREPAYMENT RIDER TO NOTE' ATTACHED HERETO AND MADE A PART HEREOF. *"Redacted"*

*"Redacted"*

# BALLOON NOTE
(Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

May 26, 2006                              OAKMONT                         Pennsylvania
[Date]                                     [City]                          [State]

1136 RESERVOIR AVENUE
MONESSEN, PA  15062
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $     56,525.00                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

Wilmington Finance, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of                         9.520%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the       1st       day of each month beginning on  July 1, 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on                June 1, 2036                                  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    PO Box 209
Plymouth Meeting, PA  19462
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $   458.77

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT                    Form 3260 1/01
Page 1 of 3
VMP®-870N (0205)                       VMP MORTGAGE FORMS -(800)521-7291
DDS-BN1                                                                              Initials: _____

M N

EXHIBIT A

18-62003-rk   Doc 8-1   FILED 10/11/18   ENTERED 10/11/18 09:27:01   Page 1 of 32



## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

-870N (0205)
DDS-BN!

Form 3260 1/01
Initials:

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Maria Hollis_ _____ (Seal)
MARIA HOLLIS                        -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

*[Sign Original Only]*

# PREPAYMENT RIDER TO NOTE

"Redacted"

The Note dated         May 26, 2006        between
Wilmington Finance, Inc.

(Lender) and

MARIA HOLLIS

(Borrower or I)

is hereby amended as follows:

I.        Additional Covenants. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender covenant, and agree, that the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" or "BORROWER'S PAYMENTS BEFORE THEY ARE DUE" are amended to read as follows:

Subject to the Prepayment Penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

If, within the     36     month period beginning with the date I execute the Note (the "Penalty Period"), I make a Full Prepayment, or Partial Prepayment in any twelve (12)-month period that exceeds 10% of the original Principal loan amount, I will pay a Prepayment charge as consideration of the Note Holder's acceptance of such Prepayment. The Prepayment charge will equal         5.000% of the then Principal balance of the Note. No Prepayment charge will be assessed for any Prepayment occurring after the Penalty Period.

The Rider will remain in full force and effect unless the Note is transferred by Lender and the Borrower is notified in writing by the new Note Holder that such Note Holder, at its sole option, has declared the Rider null and void. If the Rider is declared null and void, the original Note terms shall remain in full force and effect.

_Maria Hollis_         (Seal)                  (Seal)
                     -Borrower                     -Borrower
MARIA HOLLIS

                     (Seal)                  (Seal)
                     -Borrower                     -Borrower

                     (Seal)                  (Seal)
                     -Borrower                     -Borrower

                     (Seal)                  (Seal)
                     -Borrower                     -Borrower

DDS-BAF

(03/03)

ALLONGE TO NOTE

**"Redacted"**

| | |
|---|---|
| Allonge to note dated: | 5/26/2006 |
| In Favor of : | Wilmington Finance, Inc. |
| And executed by: | **MARIA HOLLIS** |
| Property Address: | 1136 RESERVOIR AVENUE<br>MONESSEN, PA 15062, |
| Loan Amount: | $ 56,525.00 |
| Pay to the order of : | |
| without recourse: | Wilmington Finance, Inc. |

By:

Title:

Don Malabuyo
Designated Signer



ORIGINAL

# LOAN MODIFICATION AGREEMENT

Loan No.: "Redacted"  Custodian: "Redacted"

Borrower(s): Maria Hollis
Property: 1136 Reservoir Ave
Monessen, PA 15062

This Loan Modification Agreement ("Agreement") is made this 14th day of October, 2008 between Wilshire Credit Corporation ("Wilshire") as servicer for the owner of the above loan, and Maria Hollis ("Borrower(s)").

## FACTS

Wilshire is the servicer of the above Loan arising from a promissory note in the original principal amount of $56,525.00 secured by a deed of trust or mortgage on the above Property. Prior to any modifications, the amount owing on this Loan as of 11/1/2008 is as follows:

| | |
|---|---|
| Principal | $56,251.73 |
| Interest | 3,121.72 |
| Advances Posted to Account | 834.96 |
| Fees and Charges Posted to Account | 48.69 |
| Unapplied Funds | 311.17 |
| | |
| Total | $59,945.93 |

There may be additional amounts owed if Wilshire has not yet posted charges to the Loan, if prior payments have been made with non-sufficient funds, or taxes and insurance have not been paid. These amounts plus any future fees, expenses or charges as permitted by the Note, Deed of Trust/Mortgage or by law are referred to as "Additional Charges."

Borrower(s) are in default under the Note and Deed of Trust/Mortgage.

## AGREEMENT

For good and valuable consideration, the Borrower(s) and Wilshire agree as follows:

1. **Acknowledgement.** The above Facts are true.

2. **Timely Receipt of Signed Agreement.** Wilshire must receive this Agreement, signed by all Borrower(s) together with any funds that were required to be paid upon signing the Agreement, in Wilshire's office by 10/29/2008. No changes may be made to this Agreement. Wilshire is under no obligation to renew or extend this Agreement.

Version 1.0 - rev 8/22/2008
Printed 10/14/2008

1

# EXHIBIT B

3. Definitions.

    3.1 The term "Additional Charges" means additional amounts, if any, owed if Wilshire has not yet posted charges to the Loan, if prior payments have been made with non-sufficient funds, or taxes and insurance have not been paid, plus any future fees, expenses or charges as permitted by the Note, Deed of Trust/Mortgage or by law.

    3.2 The term "Note" includes the original note and any riders, renewals, extensions, modifications and loan adjustments thereof.

    3.3 The term "Deed of Trust/Mortgage" includes the deed of trust or mortgage, together with any riders, addendums, modifications, amendments, or adjustments thereto.

    3.4 The term "Maturity Date" means the original maturity date specified in the Note on which date the Loan is to be paid in full, unless such date is changed in this Agreement. If the date is changed in this Agreement, then the Maturity Date is the new date specified.

4. Loan Modification. The Note is hereby modified as follows:

DEBT FORGIVENESS

The amount of the current debt is hereby reduced by $3,170.41. This reduction of debt consists of:

| | |
|---|---|
| Principal | $0.00 |
| Interest | 3,121.72 |
| Advances Posted to Account | 0.00 |
| Fees and Charges Posted to Account | 48.69 |
| | |
| Total | $3,170.41 |

DEFERRAL OF PORTION OF UPB VIA AN ARREARAGE
(NO INTEREST ON DEFERRED AMOUNT)

$15,000.00 of the current unpaid principal amount of the Note is removed from the balance upon which interest is calculated and shall be deferred until the earlier date of the payoff of the Note or the Maturity Date. Without limitation of the loan owner's remedies, if such deferred amount is not paid on such date the Borrower(s) agree to pay interest on this amount at the rate provided by the Note as may be modified by this Agreement.

INTEREST RATE ADJUSTMENT

Effective 11/1/2008, the interest rate on the principal amount of the Note will be fixed at 8.52% per annum and will remain in effect until the scheduled change date that is after the date that is 36 months

18-62003-rk    Doc 8-1    FILED 10/11/18    ENTERED 10/11/18 09:27:01    Page 7 of 32

after the date of this modification. After this fixed-rate period, the terms of the Note and Deed of Trust/Mortgage regarding the interest rate, including terms providing for any change in the rate of interest, shall remain the same. The interest rate then will adjust on the next scheduled change date as set forth in the Note. If this is the initial interest rate change, the initial interest rate change limits as set forth in the Note will apply. For all other interest rate changes, the subsequent interest rate change limits as set forth in the Note will apply.

## PAYMENT

In addition to the principal and interest obligation of $305.45, Borrower(s) are required to make monthly escrow payments of $153.94. Borrower(s) therefore will pay this Note in regular payments of $459.39 for the 36 month fixed-rate period. Such installments shall be due and payable on the 1st day of each month beginning 12/1/2008. The escrow portion of the monthly payment is subject to change due to increases or decreases in taxes and/or insurance premiums, and the monthly payment above may be changed by Wilshire to reflect such increase or decrease.

After this 36 month fixed-rate period, Borrower will pay the Note in regular monthly payments on the 1st day of each month until the Maturity Date. If this Loan Modification Agreement increased the principal amount owing on this Loan, the monthly payment likely will be greater than the original monthly payment. Wilshire or a subsequent servicer will advise the Borrower(s) of the monthly payment that will be required to be paid.

## LATE CHARGE

The amount of the late charge that may be charged to the borrower(s) under the terms of the Note of Deed of Trust/Mortgage will be 5 % of the overdue payment of principal and interest.

5. <u>Amount Owing After Modification.</u> After all note modifications referenced above, the amount owing on this loan is as follows:

| | |
|---|---|
| Principal | $41,251.73 |
| Interest | 0.00 |
| Advances Posted to Account | 523.79 |
| Fees and Charges Posted to Account | 0.00 |
| Arrearage Account | 15,000.00 |
| Unapplied Funds | 0.00 |
| | |
| Total | $56,775.52 |

6. <u>Refunds and Reimbursements.</u> In the event Wilshire receives any funds from any third parties as a refund or reimbursement for any costs or charges that Wilshire has advanced on behalf of the Borrower(s), Wilshire shall not be required to refund such sums to the Borrower(s) and may apply such funds to the loan as it deems appropriate.

18-62003-rk   Doc 8-1   FILED 10/11/18   ENTERED 10/11/18 09:27:01   Page 8 of 32

7. <u>Additional Charges and Final Payment</u>. Additional Charges, if any, will be added to the Borrower(s)' account and shall be due as provided in the account statement. If Borrower(s) were in default, Wilshire may continue to incur cost arising from such default, including without limitation, costs to maintain contact with the Borrower(s) and to value or inspect the Property, at the cost of the Borrower(s). All other amounts remaining due under the Note and Deed of Trust/Mortgage, if any, after the monthly payments are made, shall be due and payable on the Maturity Date.

8. <u>Full Agreement/Amendment</u>. Except for the modifications above, the Note and the Deed of Trust/Mortgage shall remain unchanged and the Borrower(s) ratify the Note and Deed of Trust/Mortgage as modified by this Agreement. However, if the Note may be assumed by another person, the terms of this Loan Modification Agreement are not assumable unless required by law. The Note and Deed of Trust/Mortgage as modified by this Agreement constitute the only agreement of the parties and supersede any prior discussions or proposed agreements or representations, whether made orally or in writing, including any prior loan modifications or payment plans. This Agreement cannot be amended without the written consent of both parties.

9. <u>Default</u>.

    9.1 This Loan Modification is made by Wilshire with the assumption that all prior payments made by the Borrower(s) have been made with sufficient funds. If any payments were not made with sufficient funds, Wilshire may void this Agreement.

    9.2 Borrower(s) agree to pay the Note according to the terms thereof as modified by this Agreement and to perform all of the acts to be performed by the Borrower(s) under the Deed of Trust/Mortgage. Upon any default under the Note or Deed of Trust/Mortgage as modified by this Agreement, the owner of the Note, without waiver of any other remedies, shall have all rights provided in the Note and Deed of Trust/Mortgage and as provided by applicable law. The term "Note" includes the original note and any riders, renewals, extensions, modifications and loan adjustments thereof.

10. <u>Assumption by New Owner</u>. If the Borrower(s) acquired title to the Property after the Deed of Trust/Mortgage was in effect, Borrower(s) hereby agree to perform each and all of the obligations and covenants of the Note and Deed of Trust/Mortgage as modified by this Agreement to the same extent and with the same effect as if the Borrower(s) originally had executed all of these documents.

11. <u>Effect of Bankruptcy</u>. If Borrower(s) received a discharge of the Loan debt in a bankruptcy proceeding and the debt has not been reaffirmed in bankruptcy court, Borrower(s) are not personally liable for the discharged debt, the Loan is non-recourse, and recovery will be limited to the collateral Property.

18-62003-rk    Doc 8-1    FILED 10/11/18    ENTERED 10/11/18 09:27:01    Page 9 of 32

12. Release of Claims.  As consideration for the modification made herein, Borrower(s), on behalf of themselves, their heirs, executors, administrators and assigns, hereby, jointly and severally, knowingly and voluntarily, release, discharge and covenant not to sue Wilshire, any servicer of the loan, any owner(s) of the Loan, and any of their predecessors, successors and shareholders from any and all claims, demands, liabilities, defenses, setoffs, counterclaims, actions and causes of action of whatsoever kind or nature, whether known or unknown, whether legal or equitable, related or connected in any manner to the Note or Deed of Trust/Mortgage, which the Borrower(s) have or may have through the date of this Agreement.

If applicable, Borrower(s) voluntarily waive the provision of California Civil Code Section 1542, and any other provision or statute of like effect, which provides: *"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if know by him or her must have materially affected his or her settlement with the debtor."*

Borrower(s) warrant that they have read and understand the aforesaid Section 1542 and they have had the opportunity to consult with and be advised by counsel regarding its meaning and effect and they voluntarily waive its provisions and any other provisions or statute of like effect.

13. Severability of Provisions.  If any provision of this Agreement is determined under applicable law to be unenforceable, such provision shall be deemed to be severed from this Agreement, and all remaining provisions shall remain in full force and effect.

14. Copies.  Any copy of this Agreement shall be considered an original.

BORROWER(S)

By: _Maria Hollis_

Name: Maria Hollis

Date: _10/16/2008_

By: _____

Name:

Date: _____

WILSHIRE CREDIT CORPORATION

By: _____

Name:

Wilshire Credit Corporation

14523 SW Millikan Way, Suite 200

Beaverton, Oregon 97005

18-62003-rk    Doc 8-1    FILED 10/11/18    ENTERED 10/11/18 09:27:01    Page 10 of 32

*"Redacted"*



I hereby CERTIFY
that this document is
recorded in the
RECORDER'S OFFICE
of Westmoreland County
Pennsylvania

*Tom Murphy*

Tom Murphy • Recorder of Deeds

**Mail to:**
Settlement Services
333 Allegheny Ave
Suite 200
Oakmont PA 15139
412-820-2333

Prepared By:
Wilmington Finance, Inc.
401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462

Return To :
Wilmington Finance, Inc.
401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462

Parcel Number:    20-02-06-0-368

Premises: 1136 RESERVOIR AVENUE
                  MONESSEN, PA 15062

RECEIVED
JUN 29 2006
BY

```
Instr:200606080027278    06/08/2005
P:1 of 19    F:$68.50    11:05AM
Tom Murphy    T20060027942
Westmoreland County RecorderP
```

[Space Above This Line For Recording Data]

## MORTGAGE

*"Redacted"*

*"Redacted"*

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated                    May 26, 2006
together with all Riders to this document.

(B) "Borrower" is
MARIA HOLLIS

THIS DOCUMENT
RECORDED ON  6/8/06
200606 08 202258
DBV _____ PAGE _____

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3039 1/01

VMP ®-6A(PA) (0508)
Page 1 of 15                                                    Initials: *MH*
          VMP Mortgage Solutions, Inc. (800)521-7291

DDS-6PA

*TR06351*

EXHIBIT C

**(D) "Lender" is**

Wilmington Finance, Inc.

Lender is a   Corporation

organized and existing under the laws of                                    Delaware

Lender's address is   401 Plymouth Road, Suite 400

Plymouth Meeting, PA  19462

**(E) "Note"** means the promissory note signed by Borrower and dated                    May 26, 2006

The Note states that Borrower owes Lender

Fifty-Six Thousand Five Hundred Twenty-Five and 00/100                                    Dollars

(U.S. $56,525.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic

Payments and to pay the debt in full not later than                    June 1, 2036

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ Second Home Rider

☒ Balloon Rider               ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider

☐ VA Rider                    ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP®-6A(PA) (0608)                    Page 2 of 16                    Initials:                    Form 3039  1/01

DDS-6PA


**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the                     County              [Type of Recording Jurisdiction]
of                                WESTMORELAND                           [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
1136 RESERVOIR AVENUE                                                              [Street]
MONESSEN                           [City] , Pennsylvania        15062             [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

VMP -6A(PA) (0508)                        Page 3 of 16       Initials: _MH_        Form 3039 1/01
DDS-6PA

Instr:200606080027278        06/08/2006
P:4 of 19       F:$68.50        11:05AM
Tom Murphy                  T20060027942
Westmoreland County RecorderP

## Schedule "A" Legal Description

All that certain lot or piece of land situate in the City of Monessen, County of Westmoreland and Commonwealth of Pennsylvania, being Lot Number 2312 South of Schoonmaker Avenue, lying between Division Street and South Fourteenth Street, fronting on Reservoir Avenue, 35 feet, running back on its Eastern boundary line 127.36 feet and on its Western boundary line 125.41 feet to a fifteen foot wide alley, being 35.05 feet wide at its rear end, same being an irregular shaped lot, as per Plan of East Side Land Company's Second Addition to Monessen duly recorded in the Office of the Recorder of Deeds, in and for the County of Westmoreland, in Plan Book Volume 2, Page 21.

Subject to all exceptions, restrictions, covenants, reservations, etc. of record.

Parcel/Tax I.D. Number: 20-02-06-0-368.

Being designated as Parcel Number: 20-02-06-0-368

"Redacted"

_M H_



Instr:200600600027276    06/08/2006
P:5 of 19    F:$68.50    11:06AM
Tom Murphy    T200600027942
Westmoreland County RecorderP

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.

18-62003-rk    Doc 8-1    FILED 10/11/18    ENTERED 10/11/18 09:27:01    Page 15 of 32


To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.


Instr:200606000027278    06/08/2006
P:7 of 19    F:$68.50    11:05AM
Tom Murphy    T20060027942
Westmoreland County RecorderP

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

18-62003-rk    Doc 8-1    FILED 10/11/18    ENTERED 10/11/18 09:27:01    Page 17 of 32



Instr:200606000027278   06/08/2006
P:8 of 19   F:$68.50   11:05AM
Tom Murphy   T20060027942
Westmoreland County RecorderP

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

18-62003-rk   Doc 8-1   FILED 10/11/18   ENTERED 10/11/18 09:27:01   Page 18 of 32



Instr:200606080027276   06/08/2006
P:9 of 19    F:$68.50     11:05AM
Tom Murphy               T20060027942
Westmoreland County RecorderP

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

18-62003-rk   Doc 8-1   FILED 10/11/18   ENTERED 10/11/18 09:27:01   Page 19 of 32



Instr:200606080027278    06/08/2006
P:10 of 19    F:$68.50    11:05AM
Tom Murphy    T20060027942
Westmoreland County RecorderP

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

18-62003-rk    Doc 8-1    FILED 10/11/18    ENTERED 10/11/18 09:27:01    Page 20 of 32



Instr:200606080027278    06/08/2006
P:11 of 19    F:$68.50    11:06AM
Tom Murphy
Westmoreland County RecorderP
T20060027942

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.

VMP®-6A(PA) (0508)
DDS-6PA

Page 10 of 16

Initials: _M.H._

Form 3039  1/01



Instr:200606080027270    06/08/2006
P:12 of 19    F:$68.50    11:05AM
Tom Murphy    T20060027942
Westmoreland County RecorderP

Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

18-62003-rk  Doc 8-1  FILED 10/11/18  ENTERED 10/11/18 09:27:01  Page 22 of 32



**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.

-6A(PA) (0508)
DDS-6PA

Page 12 of 16

Initials: _____

Form 3039 1/01

18-62003-rk   Doc 8-1   FILED 10/11/18   ENTERED 10/11/18 09:27:01   Page 23 of 32



Instr:200606000027279      06/06/2006
P:14 of 19      F:$69.50      11:05AM
Tom Murphy      T20060027942
Westmoreland County RecorderP

Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

18-62003-rk   Doc 8-1   FILED 10/11/18   ENTERED 10/11/18 09:27:01   Page 24 of 32


Instr:200806080027278  06/08/2006
P:15 of 19    F:$68.50      11:05AM
Tom Murphy              T20060027942
Westmoreland County Recorder

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

18-62003-rk    Doc 8-1    FILED 10/11/18    ENTERED 10/11/18 09:27:01    Page 25 of 32


Instr:200606080027279    06/08/2006
P;18 of 19      F:$68.50        11:05AM
Tom Murphy              T20060027942
Westmoreland County RecorderP

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____


_____ (Seal)
MARIA HOLLIS                        -Borrower


_____


_____ (Seal)
                                    -Borrower


_____ (Seal)        _____ (Seal)
                      - Borrower                                    -Borrower


_____ (Seal)        _____ (Seal)
                      - Borrower                                    -Borrower


_____ (Seal)        _____ (Seal)
                      - Borrower                                    -Borrower




Instr:200606080027278    06/08/2006
P:19 of 19    F:$68.50    11:06AM
Tom Murphy    T20060027942
Westmoreland County RecorderP

COMMONWEALTH OF PENNSYLVANIA,    *westmoreland*    County ss:

On this, the *24* day of *MAY 2006*, before me, the
undersigned officer, personally appeared

*Maria Wollis*

known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires: *2/21/09*

> COMMONWEALTH OF PENNSYLVANIA
> Notarial Seal
> George V. Lewis, Notary Public
> Elizabeth Twp., Allegheny County
> My Commission Expires Feb. 21, 2009
> Member, Pennsylvania Association of Notaries

*George V Lewis*
_____

*Notary Public*
_____
Title of Officer

**Certificate of Residence**

I, *George V. Lewis*, do hereby certify that
the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this *24* day of *MAY 2006*

*George V Lewis*
_____
Agent of Mortgagee

VMP®  -6A(PA)  (0508)
DDS-6PA

Page 18 of 18

Initials: *MW*

Form 3039  1/01



Instr:200606000027278   06/08/2006
P:16 of 19   F:$69.50   11:06AM
Tom Murphy   T20060027942
Westmoreland County RecorderP

--- (Space Above This Line For Recording Data) ---

**"Redacted"**

# BALLOON RIDER

THIS BALLOON RIDER is made this  26th  day of       May, 2006       , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note (the "Note") to

Wilmington Finance, Inc.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1136 RESERVOIR AVENUE
MONESSEN, PA  15062
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

Initials: _____

BALLOON RIDER -- MULTISTATE          Page 1 of 2          (01/03)
DDS-DA3

Instr:20060608027278          06/08/2006
P:17 of 19     F:$68.50       11:05AM
Tom Murphy              T20060027942
Westmoreland County ReorderP

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants in this Balloon Rider.

_Maria Hollis_ _____                    5/26/06
Maria Hollis                        Borrower          Date

_____                    _____
                                    Borrower          Date

_____                    _____
                                    Borrower          Date

_____                    _____
                                    Borrower          Date

_____                    _____
                                    Borrower          Date

_____                    _____
                                    Borrower          Date

_____                    _____
                                    Borrower          Date

_____                    _____
                                    Borrower          Date

BALLOON RIDER -- MULTISTATE        Page 2 of 2                    (01/03)
DDS-DA3



201803130007413
Electronic Recording          03/13/2018
Pages: 3      F: $83.25        09:34AM
Tom Murphy            T20180009323
Westmoreland County Recorder

I hereby CERTIFY
that this document is
recorded in the
RECORDER'S OFFICE
of Westmoreland County
Pennsylvania

Tom Murphy • Recorder of Deeds

"Redacted"

When Recorded Return To:
DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

Assessor's/Tax ID No. 20-02-06-0-368 –00–000

CORPORATE ASSIGNMENT OF MORTGAGE

Westmoreland, Pennsylvania
SELLER'S SERVICING ...      "Redacted"

"Redacted"

Date of Assignment: March 7th, 2018
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SPECIALTY UNDERWRITING
AND RESIDENTIAL FINANCE TRUST MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES
2006-BC4

I hereby certify the precise address of the within named Assignor is P.O. BOX 2026, FLINT, MI
48501-2026.

I hereby certify the precise address of the within named Assignee is 425 WALNUT STREET,
CINCINNATI, OH 45202.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E
Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI
48501-2026

Executed By: MARIA HOLLIS  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR WILMINGTON FINANCE, INC.
Date of Mortgage:  05/26/2006 Recorded:  06/08/2006  as Instrument No.: 200606080027278 In the
County of Westmoreland, State of Pennsylvania.
Property Address: 1136 RESERVOIR AVENUE, MONESSEN, PA 15062 in the City of MONESSEN

I do certify that the precise address of U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
SPECIALTY UNDERWRITING AND RESIDENTIAL FINANCE TRUST MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2006-BC4 is 425 WALNUT STREET, CINCINNATI, OH
45202
Attested By: _____
**Omar Basped**

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named

EXHIBIT D

All that certain lot or piece of land situate in the City of Monessen, County of Westmoreland and Commonwealth of Pennsylvania, being Lot Number 2312 South of Schoonmaker Avenue, lying between Division Street and South Fourteenth Street, fronting on Reservoir Avenue, 35 feet, running back on its Eastern boundary line 127.36 feet and on its Western boundary line 125.41 feet to a fifteen foot wide alley, being 35.05 feet wide at its rear end, same being an irregular shaped lot, as per Plan of East Side Land Company's Second Addition to Monessen duly recorded in the Office of the Recorder of Deeds, in and for the County of Westmoreland, in Plan Book Volume 2, Page 21.

Subject to all exceptions, restrictions, covenants, reservations, etc. of record.

Being designated as Parcel Number: 20-02-06-0-368-00-000

FOR INFORMATIONAL PURPOSES ONLY: Being known as 1136 Reservoir Avenue, Monessen, PA 15062

BEING THE SAME PREMISES which Richard J. Hansen, Administrator of the Estate of Ellen A. Hansen, by Deed dated May 10, 2002 and recorded March 20, 2003 in Instrument #200303200021710 in the Office of the Recorder of Deeds in and for the County of Westmoreland, granted and conveyed unto Maria Hollis, in fee.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

Assignee, the said Mortgage having an original principal sum of $56,525.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS
On March 7th, 2018

By: _____
OMAR BASPED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On March 7th, 2018, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas, personally appeared OMAR BASPED, Vice-President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DANIELA HORVATH
Notary Expires: 01/27/2020 #128862890

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

(This area for notarial seal)